IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MIRELLA K. H., | § | |
|     Plaintiff, | § | |
| | § | |
| V. | § | Civil Action No. 3:24-CV-2585-K |
| | § | |
| COMMISSIONER, SOCIAL | § | |
| SECURITY | § | |
| ADMINISTRATION, | § | |
|     Defendant. | § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is this appeal of the denial of Plaintiff Mirella K. H.'s application for Social Security supplemental income and disability benefits. *See generally* Doc. No. 1 (Complaint) and Doc. No. 17 (Plaintiff's Memorandum of Law). The Court has carefully considered the parties' briefs, the administrative record, and the applicable law. For the following reasons, the Commissioner's decision is **AFFIRMED**.

## I. Background

### A. Procedural History

In April 2021, Plaintiff filed for both disability insurance benefits ("DIB") and supplemental security income ("SSI") alleging a period of disability beginning in July 2020 due to COVID-19 complications, thrombosis, vision issues, brain fog, and forgetfulness caused by low oxygen levels. Doc. No. 12-1 at 76. Plaintiff's claim was

denied at all administrative levels, and she now appeals to this Court under 42 U.S.C. § 405(g).

## B. Factual History

Plaintiff, who was 43 years old at the alleged onset of her disability, has a tenth-grade education and past relevant employment working in a warehouse as a child monitor. Doc. No. 12-1 at 35, 256; Doc. No. 12-2 at 416. Plaintiff's relevant medical history, spanning from 2020 through 2024, reveals diagnoses of obesity and respiratory complications resulting from Plaintiff's prior COVID-19 infection. Doc. No. 12-2 at 290, 461-62, 593. In July 2020, Plaintiff was hospitalized and treated for COVID-19 pneumonia and acute respiratory failure after presenting to the ER with shortness of breath. Doc. No. 12-1 at 401, 465. Upon discharge in August 2020, Plaintiff was prescribed supplemental home oxygen at a rate of two liters per minute via nasal cannula. Doc. No. 12-1 at 488.

## C. Medical Opinion Evidence

In October 2021, Dr. Harar Yusuf, M.D., conducted a consultative medical examination of Plaintiff. Doc. No. 12-2 at 355. At that time, Plaintiff reported shortness of breath and was observed using portable oxygen at four liters per minute. Doc. No. 12-2 at 355-56. On examination, Dr. Yusuf noted that Plaintiff's oxygen saturation was 98% on room air, and that she was alert, oriented, and in no apparent distress. Doc. No. 12-2 at 356. Dr. Yusuf further observed that Plaintiff exhibited

normal gait and was able to sit, stand, carry, handle objects, hear, and speak.  Doc. No. 12-2 at 356.  She was also able to walk on her toes and heels and could squat.  Doc. No. 12-2 at 356.

In January 2022, Plaintiff underwent a six-minute walk test.  Doc. No. 12-2 at 406.  Before the test, Plaintiff's oxygen saturation measured 99% on room air.  Doc. No. 12-2 at 406.  Her oxygen saturation decreased to 95% while walking but returned to 99% following the test.  Doc. No. 12-2 at 406.  In total, Plaintiff walked 1,000 feet in six minutes without stopping.  Doc. No. 12-2 at 406.  Following the exercise, Plaintiff reported a headache and dizziness, however these symptoms improved with rest.  Doc. No. 12-2 at 406.

Between August 2022 and May 2023, Plaintiff's oxygen saturation levels repeatedly measured between 96% and 100% on room air.  Doc. No. 12-2 at 437, 447, 472, 496, 506.  During this period, Plaintiff was also described as alert and oriented and as exhibiting a normal gait.  Doc. No. 12-2 at 438, 483.  Treatment notes from September 2022 indicate that Plaintiff was not observed using supplemental oxygen, although she continued to report shortness of breath.  Doc. No. 12-2 at 445.

In August 2023, Plaintiff's BMI was calculated at 39.1 and her oxygen saturation was between 95% and 96% on room air.  Doc. No. 12-2 at 531-33.  Although she stated she had difficulty breathing during exertion, Plaintiff reported that she had been able to "wean off" daytime oxygen.  Doc. No. 12-2 at 530-31.

3

The following month, Plaintiff presented to pulmonologist Timothy R. Chappell, M.D., to undergo a pulmonary function test. Doc. No. 12-2 at 593. Plaintiff again reported that she had "slowly recovered" and no longer relied on portable oxygen during the day, although she continued to use it at night. Doc. No. 12-2 at 593. Dr. Chappell recorded Plaintiff's oxygen saturation at 97% on room air. Doc. No. 12-2 at 592. However, he noted that her test results were consistent with dyspnea, which is defined as "difficult or labored respiration," on exertion and needing oxygen. Doc. No. 12-2 at 594-95; *see* Merriam-Webster Medical Dictionary, Merriam-Webster Online, https://www.merriam-webster.com/dictionary/dyspnea (last visited Mar. 23, 2026).

### D. Hearing Testimony

At the 2024 administrative hearing, Plaintiff testified that since contracting COVID-19 in 2020, she requires supplemental oxygen and can no longer walk long distances. Doc. No. 12-1 at 50. She averred that she becomes short of breath even while sitting and that she will begin to cough if she talks too much. Doc. No. 12-1 at 55, 60. She further testified that she must use oxygen "all the time" and that the longest she can go without wearing her oxygen is "maybe 30 minutes or hours." Doc. No. 12-1 at 50-51. She stated that the only time she is not hooked up to an oxygen machine is when she uses the restroom, takes a shower, or cooks a meal. Doc. No. 12-1 at 50-51.

Plaintiff testified that her large oxygen machine weighs between 35 to 40 pounds and, while she can wheel the machine around, she cannot climb stairs with it or place it in her car.  Doc. No. 12-1 at 51.  Although she also has a portable oxygen machine, Plaintiff averred that the device can only be used for an hour and a half before needing charged.  Doc. No. 12-1 at 52.

A vocational expert ("VE") testified that an individual with Plaintiff's education and work experience who is limited to understanding, remembering, and carrying out one and two step instructions; making simple decisions and simple judgments; performing only light work; and only occasional exposure to hazards such as unprotected heights, moving mechanical parts, and atmospheric conditions, could not perform Plaintiff's past work.  Doc. No. 12-1 at 65.  However, the VE testified that such an individual could perform work in the national economy as a small parts assembler, merchandise marker, or cafeteria attendant.  Doc. No. 12-1 at 65.  The VE further testified that if the individual required a portable oxygen device while working, its use would constitute an accommodation that could potentially be work preclusive, as it would depend on whether an employer would permit it.  Doc. No. 12-1 at 67-68.

### E. The ALJ's Findings

Following the administrative hearing, the ALJ issued his Hearing Decision utilizing the five-step sequential evaluation set forth in 20 C.F.R. § 416.920 in determining whether Plaintiff was disabled.  At step one, the ALJ found that Plaintiff

met the insured status requirements of the Social Security Act through September 30, 2027, and had not engaged in substantial gainful activity since July 29, 2020. Doc. No. 12-1 at 24. At step two, the ALJ determined that Plaintiff had the severe impairments of post COVID-19 syndrome, obesity, major depressive disorder, and mixed anxiety and depressive disorder. Doc. No. 12-1 at 25. However, the ALJ further found that none of Plaintiff's impairments, singularly or in combination, met or medically equaled any listed impairment. Doc. No. 12-1 at 25.

At step three, the ALJ found that Plaintiff had the Residual Functional Capacity ("RFC") to perform "light work . . . except: she can have occasional exposure to hazards such as unprotected heights and moving mechanical parts; she can have occasional exposure to atmospheric conditions; and she can understand, remember, and carry out one and two-step instructions, make simple decisions, and make simple judgments." Doc. No. 12-1 at 27.

At step four, the ALJ found that Plaintiff did not have the RFC to perform her past work. Doc. No. 12-1 at 34. At step five, the ALJ found that there were a significant number of jobs in the national economy that Plaintiff could perform. Doc. No. 12-1 at 34. The ALJ thus concluded that Plaintiff was not disabled under the Act. Doc. No. 12-1 at 35.

## II. Applicable Law

The definition of disability under the Act is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ."  42 U.S.C. § 423(d)(1)(A).  To determine whether a claimant is disabled, the Commissioner utilizes a sequential five-step inquiry: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant's impairments are "severe"; (3) whether the claimant's impairment "meets or equals" one of the listings in the relevant regulations; (4) whether the claimant can still do her past relevant work; and (5) whether the impairment prevents the claimant from doing any other available work.  *Webster v. Kijakazi*, 19 F.4th 715, 718 (5th Cir. 2021) (citing 20 C.F.R. § 404.1520(a)(4)).  The claimant bears the burden on the first four steps.  *Id.* (citation omitted).  If the claimant meets her burden, the burden then shifts to the Commissioner to "prove the claimant's employability."  *Id.* (citation omitted).

The Court's review "is exceedingly deferential and limited to two inquiries: whether substantial evidence supports the ALJ's decision, and whether the ALJ applied the proper legal standards when evaluating the evidence."  *Taylor v. Astrue*, 706 F.3d 600, 602 (5th Cir. 2012).  "And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high.  Substantial

7

evidence, [the Supreme] Court has said, is more than a mere scintilla.  It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (internal citations and quotation marks omitted).  The Court can neither "reweigh the evidence or substitute its judgment for the Commissioner's." *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005).  A finding that substantial evidence does not exist "is appropriate only if no credible evidentiary choices or medical findings support the decision." *Whitehead v. Colvin*, 820 F.3d 776, 779 (5th Cir. 2016) (cleaned up).

### III. Analysis

On appeal, Plaintiff argues that the ALJ's determination is not supported by substantial evidence because (1) the RFC does not include Plaintiff's use of medically necessary supplemental oxygen; (2) the ALJ failed to adequately evaluate Plaintiff's subjective complaints; and (3) the RFC fails to properly consider how Plaintiff's obesity could affect her ability to work.  Doc. No. 17 at 5.  Upon review, the Court finds that Plaintiff's arguments lack merit.

### A. The ALJ's Rejection of Plaintiff's Need for Supplemental Oxygen is Supported by Substantial Evidence.

In her first issue on appeal, Plaintiff argues that the ALJ improperly relied on mischaracterizations of the medical evidence in determining that she did not require supplemental oxygen during the day.  Doc. No. 17 at 15.  Specifically, Plaintiff contends that the ALJ selectively cited portions of the medical record to support this

conclusion, while disregarding evidence indicating that Plaintiff used supplemental oxygen and that such use was necessary.  Doc. No. 17 at 15-19.  The Court disagrees.

The RFC assessment is based on "all of the relevant evidence in the case record," including, but not limited to, medical history, medical signs and laboratory findings, the effects of treatment, reports of daily activities, lay evidence, recorded observations, medical source statements, and work evaluations.  SSR 96-8p, 61 Fed. Reg. 34,477 (July 2, 1996), 1996 WL 362207.  As factfinder, the ALJ has the sole responsibility for weighing the evidence and determining the relative weight to be given it.  *Chambliss v. Massanari*, 269 F.3d 520, 523 (5th Cir. 2001).  The ALJ is not required to include a limitation in the RFC that he did not find supported by the record.  *Scott v. Comm'r, Soc. Sec. Admin*, No. 4:20-CV-1136, 2022 WL 4240888, at *5 (N.D. Tex. Sept. 14, 2022) (Cureton, J.) (citing *Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991)); *see Masterson v. Barnhart*, 309 F.3d 267, 273 (5th Cir. 2002).  However, in determining a claimant's RFC, the ALJ "must consider all the record evidence and cannot 'pick and choose' only the evidence that supports his position."  *Loza v. Apfel,* 219 F.3d 378, 393 (5th Cir. 2000) (citations omitted).

In his decision, the ALJ thoroughly summarized the evidence bearing on Plaintiff's oxygen use, including records showing that she was prescribed home oxygen at two liters per minute following her COVID-19 hospitalization in August and September 2020.  *See* Doc. No. 12-1 at 29-31.  The ALJ also acknowledged that,

9

between October and December 2020, Plaintiff both reported using portable oxygen and was observed using oxygen therapy as recommended. Doc. No. 12-1 at 29. The ALJ additionally noted that Plaintiff was seen using portable oxygen at a physical in October 2021. Doc. No. 12-1 at 30.

The ALJ further explained, however, that later treatment notes from April and September 2022 indicated that Plaintiff was no longer using supplemental oxygen at her appointments. Doc. No. 12-1 at 29-30. The ALJ also observed that Plaintiff's oxygen saturation levels on room air have consistently measured above 95% since December 2020, that multiple examinations reflected normal respiratory findings, and that Plaintiff completed a six-minute walk test with her saturation dropping only to 95%. Doc. No. 12-1 at 29-31. Based on this objective medical evidence, the ALJ found Plaintiff's statements that she is dependent on supplemental oxygen were not supported by her "longitudinal record." Doc. No. 12-1 at 31.

Plaintiff asserts that the ALJ failed to give proper consideration to her only pulmonary examination, conducted by Dr. Chappell in September 2023, because he described the examination in a single paragraph and addressed it only to the extent it "support[ed] his narrative." Doc. No. 17 at 17. However, the ALJ noted the precise

results of the pulmonary function test, including Plaintiff's FVC, FEV1, and DLCO values.  Doc. No. 12-1 at 30.

Although the ALJ did not independently interpret these raw values, the ALJ is not required to translate raw medical data into functional limitations without a supporting medical opinion.  *See Hernandez v. O'Malley,* No. 5:23-CV-1403, 2025 WL 899971, at *3 (W.D. Tex. Feb. 27, 2025) (explaining the difference between objective medical evidence, which an ALJ is authorized to interpret, and raw medical data, which he is not); *Moore v. Saul,* No. 3:20-CV-161, 2022 WL 987735, at * 3 (N.D. Miss. Mar. 31, 2022) (holding that the ALJ improperly interpreted medical data where the ALJ drew conclusions from evidence wholly unconsidered by any medical expert, such as plaintiff's MRI results).

While Dr. Chappel appears to have handwritten the notes "severe restriction" and "severe reduction DLCO" next to Plaintiff's results, he did not provide an opinion on how those findings transfer into functional limitations.  *See* Doc. No. 12-2 at 581, 592-95.  Instead, he noted only that the results of her pulmonary function test and chest x-ray were "consistent with her DOE [dyspnea on exertion]," and "needing oxygen."   Doc. No. 12-2 at 594-95; *see* Merriam-Webster Medical Dictionary,

https://www.merriam-webster.com/dictionary/doe#medicalDictionary    (last    visited

Mar. 23, 2026) [https://perma.cc/NP6Z-MYE6].

While this observation seemingly weighs in Plaintiff's favor, other portions of

Dr. Chappel's narrative notes contradict Plaintiff's purported oxygen dependency.  As

the ALJ observed, for example, Plaintiff reported that she "had slowly recovered from

her COVID, and she no longer chose to rely on portable oxygen during the day[.]"

Doc. No. 12-1 at 30 (citing Doc. No. 12-2 at 593).  While Plaintiff objects that the

ALJ's phrasing that she "**had** slowly recovered from her COVID" does not match the

precise language in Dr. Chappel's note stating that she "**has** slow recovery," this

distinction does not materially alter the substance of the report.  Doc. No. 17 at 17

(citing Doc. No. 12-2 at 594).  Moreover, an ALJ's RFC determination need not mirror

or exactly match a medical professional's opinion.  *Rater v. Comm'r of Soc. Sec.*, No. 7:24-

CV-142, 2025 WL 1287922, at *4, 7 (N.D. Tex. May 2, 2025) (Ray, J.) (citation

omitted).

Applying the deferential standard of review, the Court finds no basis to disturb

the ALJ's determination that Plaintiff does not require supplemental oxygen.  The ALJ

conducted a detailed analysis of the record, including reviewing evidence both favorable

and unfavorable to Plaintiff.  The ALJ's decision acknowledges the severity of Plaintiff's

initial illness but reasonably relies on subsequent treatment notes showing that Plaintiff

was no longer using oxygen at appointments, consistently exhibited normal respiratory

findings and oxygen saturation levels, and completed a six-minute walk test with only minimal desaturation. *See* Doc. No. 12-1 at 31. While the ALJ did not recount verbatim every piece of evidence in the record, it cannot be said that his decision was based on a mischaracterization of the evidence. Again, "conflicts in the evidence are for the Commissioner and not the courts to resolve." *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002) (internal quotations omitted). Nor may the Court reweigh the evidence or substitute its judgment for that of the Commissioner's, "even if . . . the evidence weighs against the Commissioner's decision." *Id.*

On this record, the Court concludes that the ALJ's RFC is supported by substantial evidence. Accordingly, remand is not required on this issue.

### B. The ALJ Properly Evaluated Plaintiff's Subjective Complaints.

Plaintiff also argues that the ALJ failed to adequately evaluate her subjective complaints under the two-step framework set forth by the Social Security Regulations. Doc. No. 17 at 20.

When a plaintiff alleges symptoms limiting her ability to work, she must first establish a medically determinable impairment capable of producing those symptoms. *Ripley v. Chater,* 67 F.3d 552, 556 (5th Cir. 1995) (citing 20 C.F.R. § 404.1529 (1994)). Once such an impairment is shown, the ALJ must evaluate the plaintiff's subjective complaints along with the available medical evidence in determining the individual's work capacity. *Id.* In conducting this analysis, the regulations provide that

13

the ALJ must consider factors including the plaintiff's daily activities, the location, duration, frequency, and intensity of symptoms; precipitating and aggravating factors; and the effectiveness of treatment, including medication or other measures.  20 C.F.R. §§ 404.1529(c)(1), (c)(3), (d)(4).  The ALJ must also consider inconsistencies in the evidence and the existence of any conflicts between the plaintiff's subjective statements and the remainder of the evidence.  §§ 404.1529(c)(4).

An individual's statements about the intensity and persistence of symptoms "may not be disregarded solely because they are not *substantiated* by objective medical evidence."  SSR 96-7p, 1996 WL 374186 (July 2, 1996) (emphasis added); § 404.1529(c)(2).  However, "subjective evidence need not be credited over conflicting medical evidence." *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992) (citing *Jones v. Heckler*, 702 F.2d 616, 621 n.4 (5th Cir. 1983)).  The ALJ may determine, based on his evaluation of the objective medical evidence, that an applicant's complaints "are not to be credited or are exaggerated." *Johnson v. Heckler*, 767 F.2d 180, 182 (5th Cir. 1985).  Because "the ALJ is best positioned" to assess the credibility of subjective complaints, such determinations are entitled to "considerable deference." *Falco v. Shalala*, 27 F.3d 160, 164 (5th Cir. 1994); *Wren v. Sullivan*, 925 F.2d 123, 128-29 (5th Cir. 1991).

Here, the ALJ recounted Plaintiff's testimony that she could no longer work or perform most daily activities due to her constant need for supplemental oxygen.  Doc.

14

No. 12-1 at 28.  The ALJ also described Plaintiff's statements that she suffered weekly swelling of her legs, that she spends much of the day laying down, and that she is anxious and depressed daily.  Doc. No. 12-1 at 28.  The ALJ further recounted a Function Report in which Plaintiff wrote that she had to use supplemental oxygen continuously, that she had a hard time dressing, bathing, and using the toilet, and that her impairments limited her ability to lift, squat, bend, stand, walk kneel, climb stairs, remember things, concentrate, and understand instructions.  Doc. No. 12-1 at 28.

After summarizing this evidence and detailing Plaintiff's medical records, the ALJ concluded that although Plaintiff's impairments could reasonably be expected to cause the alleged symptoms, her statements concerning the persistence and limiting effects of these symptoms were "not entirely consistent with the medical and other evidence in the record."  Doc. No. 12-1 at 31.  The ALJ then explained how specific evidence was not consistent with Plaintiff's statements regarding her need for supplemental oxygen as well as her statements concerning her related mental and physical limitations.  *See* Doc. No. 12-1 at 31.

Plaintiff argues that the ALJ erred by discrediting her subjective complaints "solely because the available objective medical evidence does not substantiate [them]."  Doc. No. 17 at 21.  However, the ALJ did not rely exclusively on a lack of objective support; rather, he identified inconsistencies and conflicts between Plaintiff's statements and the other evidence.  *See generally* Doc. No. 12-1 at 31-32.  Specifically,

15

the ALJ noted that Plaintiff's statements that she relies, or is dependent on supplemental oxygen were not consistent with her prior reports to medical providers that she had been able to wean herself off supplemental oxygen during the day, and with notes observing that she left her oxygen in the car during her appointments. Doc. No. 12-1 at 31. He further explained that Plaintiff's alleged oxygen dependency was not supported by her consistent oxygen saturation levels, and reports of normal respiratory findings during examinations. Doc. No. 12-1 at 31.

Regarding Plaintiff's alleged mental impairments, the ALJ noted that—consistent with her testimony—the record included diagnoses of depression and anxiety and there was evidence that Plaintiff intermittently presented with a depressed mood and "abnormal" memory. Doc. No. 12-1 at 31. Plaintiff contends that the ALJ inaccurately noted that the record did not include evidence of treatment with psychotropic medications, however, the ALJ accurately recounted that Plaintiff did not have a "*longitudinal* history of taking psychotropic medication." Doc. No. 12-1 at 31. As Defendant points out, this observation is consistent with record evidence indicating that Plaintiff was prescribed a psychotropic medication on one occasion. *See* Doc. No. 12-2 at 309. Finally, the ALJ also observed that Plaintiff's described psychological symptoms were inconsistent with consultative examination findings that Plaintiff had a normal thought process, normal thought content, and normal speech and with reports

16

indicating that Plaintiff was noted as having a good mood and appropriate speech on several occasions.  Doc. No. 12-1 at 33.

While the ALJ must do more than merely recite the factors described for evaluating a plaintiff's subjective symptoms, there is no requirement that "every factor must be discussed in detail in the determination."  *Giles v. Astrue,* 433 F. App'x 241, 249 (5th Cir. 2011) (citing *Clary v. Barnhart,* 214 F. App'x 479, 482 (5th Cir. 2007) ("The ALJ is not required to mechanically follow every guiding regulatory factor in articulating reasons for denying claims or weighing credibility.")).  Here, it is clear that the ALJ considered Plaintiff's subjective complaints and articulated in detail how they were inconsistent with, or unsupported by, other evidence in the record.  Although the ALJ did not conduct a formalistic examination of each of the relevant factors, his analysis sufficiently considered Plaintiff's subjective complaints.  *See e.g., Lopez v. Astrue,* 854 F. Supp. 2d 415, 424-25 (N.D. Tex. 2012) (finding that the ALJ properly evaluated Plaintiff's credibility by expressly acknowledging that he "experienced some level of pain and functional loss, but concluded that [the] plaintiff's subjective complaints were out of proportion to the objective medical evidence").  Because the

ALJ's credibility findings in this regard are supported by substantial evidence, remand is not required on this issue.

### C. The ALJ Properly Considered Plaintiff's Obesity.

In her final point of error, Plaintiff argues that the ALJ failed to adequately evaluate the effects of Plaintiff's obesity in assessing her RFC. Doc. No. 17 at 23. Specifically, she contends that although the ALJ recognized her obesity as a severe impairment at step two, he included no substantial discussion of the impairment or its potential limiting effects. Doc. No. 17 at 23.

Although obesity is not itself an impairment, an ALJ must nevertheless assess the impact of obesity on an individual's RFC. SSR 19-2p, 2019 WL 2374244, at *4 (May 20, 2019). SSR 19-2p recognizes that individuals with obesity may experience limitations in exertional functions, such as sitting, standing, walking, lifting carrying, pushing and pulling, as well as nonexertional functions such as climbing, balancing, stooping, kneeling, crouching, and crawling. *Id.* Further, because the effects of obesity combined with other impairments "may be greater than the effects of each of the impairments considered separately," they must be evaluated together. *Id.*

As a preliminary matter, Plaintiff did not claim obesity as an impairment in her initial application for disability benefits. *See* Doc. No. 12-1 at 76 (initial disability determination noting that Plaintiff filed for disability on April 21, 2021, alleging COVID-19, thrombosis, vision, brain fog and forgetfulness due to need for oxygen).

18

Plaintiff likewise did not mention her obesity, or assert any limitations caused thereby in her Adult Function Report. *See* Doc. No. 12-1 at 269-72 (writing that her continuous need for oxygen limits her ability to work, go outside, and complete daily tasks). Indeed, it appears that Plaintiff's first reference to her obesity as a severe impairment appeared in her brief submitted in advance of the February 2024 hearing. *See* Doc. No. 12-1 at 317-318.

At the hearing, Plaintiff testified that she cannot walk long distances, and she has trouble standing and sitting for long periods of time, however, she described these limitations as caused by back pain, dizziness, and shortness of breath. Doc. No. 12-1 at 53-54, 59 (testifying that she can walk only a half mile or less before becoming short of breath). She did not testify about how her weight affected her daily life, such as her ability to walk, climb, lift, or sleep, *see generally* Doc. No. 12-1 at 50-60, and her counsel appeared to focus solely on her oxygen related impairments, *see* Doc. No. 12-1 at 53, 73.

Accordingly, at the time the ALJ issued his decision, Plaintiff had presented only objective medical evidence showing diagnoses of obesity. *See e.g.,* Doc. No. 12-1 at 309. Based on this record, the ALJ listed Plaintiff's obesity as a severe impairment at step two of his analysis. Doc. No. 12-1 at 25. In determining Plaintiff's RFC, the ALJ acknowledged that obesity is no longer a listed impairment, however he stated that he considered Plaintiff's obesity "in relation to the musculoskeletal, respiratory, and

cardiovascular systems" as required by the Social Security Rulings.  Doc. No. 12-1 at 26.  While still assessing Plaintiff's RFC, the ALJ specifically mentioned that Plaintiff has a body mass index exceeding 30.00 and is therefore considered obese. Doc. No. 12-1 at 30.  He also stated that "[i]n accordance with SSR 19-2," he considered Plaintiff's obesity, acknowledging that it may affect her "ability to perform exertional functions— e.g., sit, stand, walk, lift, carry, push, and pull—postural functions—e.g., climb, balance, stoop, and crouch—manipulative functions—if there is fatty tissue in the hands and fingers—and limit [Plaintiff's] ability to tolerate certain environmental conditions." Doc. No. 18 at 8 (citing Doc 12-1 at 31).  In the following paragraph, the ALJ noted that during Plaintiff's October 2021 physical consultation, she was "was able to sit, stand, carry, handle objects," was observed as exhibiting "a normal gait" and was able to "top-toe walk, he[e]l walk, and squat."  Doc. No. 12-1 at 30 (citing Doc. No. 12-2 at 356).  He also mentioned that Plaintiff had a normal range of motion, had 5/5 strength in her bilateral upper and lower extremities, exhibited no edema, her lungs were clear, and no wheeze, crackle, or rhonchi were noted.  Doc. No. 12-1 at 30 (citing Doc. No. 12-2 at 356-57).  The ALJ concluded that, considering Plaintiff's examination findings, in particular Plaintiff's normal strength and gait, she retains the ability to perform work at the "light exertional level."  Doc. No. 12-1 at 32.

In her brief, Plaintiff does not identify additional record evidence of how her obesity impacts her functional abilities, nor does she argue that any particular

limitations resulting from her obesity were omitted from her RFC. Doc. No. 17 at 23. Instead, she argues generally that although the ALJ included "boilerplate" statements that he considered the effects of Plaintiff's obesity in accordance with SSR 19-2p, the decision does not adequately reflect such consideration. Doc. No. 17 at 23. Plaintiff relies primarily on *Lupe V. v. Commissioner of Social Security*, No. 3:23-CV-30, 2023 WL 1144235, at *4 (N.D. Tex. Mar. 14, 2024) (Toliver, J.), in support of her contention that the ALJ's consideration of her obesity was insufficient. Doc. No. 17 at 23. In *Lupe*, the Court held that the ALJ failed to adequately assess the effect of the plaintiff's obesity on her other impairments in the RFC. 2023 WL 1144235, at *4. Although the ALJ found obesity, osteoarthritis, and depression to be severe impairments, the decision offered only the conclusory statement that "the claimant's knee impairment and obesity warrant postural limitations," without any further analysis. *Id.*

Here, however, after discussing the severity of Plaintiff's obesity and the potential for limitations therefrom, the ALJ expressly considered Plaintiff's strength, range of motion, and ability to ambulate, sit, stand, carry, and handle objects. Doc. No. 12-1 at 30. Unlike in *Lupe*, he ultimately concluded that the record supported Plaintiff's ability to perform work at the light exertional level subject to limitations relating to Plaintiff's pulmonary issues. Doc. No. 12-1 at 31.

While Plaintiff now argues that her obesity has the potential to impact her already present symptoms of fatigue, difficulty ambulating, and issues with routine

movement stemming from residuals impact of her COVID infection, the ALJ rejected these subjective symptoms in light of her October 2021 physical examination which indicated that, while obese, Plaintiff exhibited no exertional limitations. Doc. No. 12-1 at 30 (citing Doc. No. 12-2 at 356-57). Because Plaintiff presented no other evidence as to the impact of her obesity on her other limitations or her ability to perform work activities, the ALJ's analysis was sufficient. *See e.g., Perkins v. Berryhill,* No. 4:18-CV-664, 2019 WL 2997082, at \*3 (N.D. Tex. June 21, 2019) (Cureton, J.), *rep. & rec. adopted* 2019 WL 2996055 (N.D. Tex. July 9, 2019) (finding that the ALJ properly considered the claimant's obesity, despite the absence of an in-dept discussion, where the ALJ referenced her body mass index and noted evidence that she could walk 30-40 minutes and perform household chores); *Scott v. Colvin*, 2013 WL 6047555, at \*11 (S.D. Tex. Nov. 14, 2013) (finding the ALJ adequately addressed obesity by stating that he considered it under the applicable regulations, but found "no evidence of any significant disturbances of the musculoskeletal, respiratory, and /or cardiac systems related to [the] obesity.").

Even if the ALJ failed to adequately consider the cumulative effect of Plaintiff's obesity on her other limitations, Plaintiff has not shown that such error was sufficiently prejudicial to warrant remand. Because procedural perfection is not required in administrative proceedings, a court "will not vacate a judgment unless the substantial rights of a party have been affected." *Kneeland v. Berryhill*, 850 F.3d 749, 761 (5th Cir.

2017) (citation and quotation marks omitted). However, when an ALJ fails to comply with the regulations governing the evaluation of obesity, courts generally find that the claimant has been prejudiced unless: "(1) the ALJ limits the claimant to sedentary work, or (2) the record is totally devoid of medical evidence establishing any obesity related limitations." *Walford v. Astrue*, No. 3-09-CV-629, 2011 WL 2313012, at *5 (N.D. Tex. June 10, 2011) (collecting cases).

Here, Plaintiff fails to identify any evidence in the record demonstrating the effects of her obesity, and the Court is not aware of any physician assessment, testimony, or other evidence indicating that Plaintiff's obesity limits her functional capacity or exacerbates her other limitations. In the absence of such evidence, Plaintiff's contention that her obesity would *likely* impact her ability to "sustain a function over time" is purely speculative. *See Vogt v. Astrue,* No. 3:11-CV-315, 2011 WL 5245421, at *11 (N.D. Tex. Nov. 2, 2011) (Ramirez, J.) (finding plaintiff did not meet her burden to show that her obesity impacted her work ability where she "fail[ed] to cite to any evidence in the record" demonstrating that her obesity exacerbated or imposed additional limitations on her other impairments"); *Dennis v. Berryhill*, No. 3:170CV0433, 2018 WL 1318982, at *8 (N.D. Tex. Mar. 13, 2018) (Ramirez, J.) (finding ALJ's alleged error in complying with a previous version of SSR 19-2p "merely speculative" where none of the medical records identified any functional limitations due to the claimant's obesity and plaintiff did not allege any such limitations during

the hearing before the ALJ); *Salas v. Astrue*, No. 4:07-CV-442, 2008 WL 5330517, at *4 (N.D. Tex. Dec. 18, 2008) (Means, J.) (holding that the ALJ's failure to expressly address the claimant's obesity was not reversible error where the plaintiff did not allege obesity as a basis for her disability application and identified no medical source attributing functional limitations to the condition).

While the ALJ owes a duty to fully and fairly develop the record, Plaintiff must nevertheless supply some evidence demonstrating her disability. With respect to any alleged disability resulting from her obesity, she has failed to meet this burden. *Vogt v. Astrue,* 2011 WL 5245421, at *11. Thus, remand is not warranted on this issue.

## IV. Conclusion

For the foregoing reasons, the Commissioner's decision is **AFFIRMED**.

**SO ORDERED.**

Signed March 30th, 2026.

_____
ED KINKEADE
UNITED STATES DISTRICT JUDGE